# COMMERCIAL LEASE AGREEMENT

THIS COMMERCIAL LEASE AGREEMENT (this "Lease") made and entered into this /6/" day of June, 2017, by and between **PHYLLIS FERGUSON HANEY**, having an address of 191 Blackhawk Road, Beaver Falls, PA 15010 (the "**Landlord**") and **FRYE TRANSPORTATION GROUP, INC. and DANIEL L. FRYE, JR.**, with an address located at 345 Ridgemont Drive, Midland, PA 15059 (the "**Tenant**").

NOW, THEREFORE, the parties hereto, in consideration of their mutual covenants and agreements herein contained and intending to be legally bound hereby, covenant and agree as follows:

1. <u>Leased Premises</u>. The Landlord does hereby lease to the Tenant, and the Tenant does hereby take from the Landlord, those certain premises (the "**Leased Premises**") consisting of "Property No. 1," located at 902 Western Avenue, Beaver, Pennsylvania 16001, and "Property No. 2," located at 1405 8th Avenue, Beaver, PA 15009, as further described on the attached Exhibit "A" attached hereto and made a part hereof (collectively, the "**Property**"). The lease of Property No. 2, having an address of 1405 8th Avenue, Beaver, PA 15009, described in Exhibit "A," shall be subordinate to an existing residential lease between Phyllis Ferguson Haney, as Landlord, and Christine Anderson and Kristin Martin, as Tenants (the "Residential Tenants"), and any and all other residential leases entered into between Phyllis Ferguson Haney and any future Residential Tenants of said Property No. 2. Tenant hereunder shall not disturb the tenancy or quiet enjoyment of Property No. 2 by the Residential Tenants until said residential lease has expired or is otherwise terminated.

**THE LEASED PREMISES AND ALL BUILDINGS AND FIXTURES THEREON ARE BEING LEASED "AS IS, WHERE IS" AND "WITH ALL FAULTS." LANDLORD MAKES NO REPRESENTATIONS OR WARRANTIES TO TENANT, AND EXPRESSLY DISCLAIMS ANY WARRANTIES, EXPRESS OR IMPLIED, RELATING TO THE CONDITION OF THE LEASED PREMISES OR ANY PART OR PORTION THEREOF.**

2. <u>Term</u>. The term of this Lease (the "**Term**") shall be three (3) years and shall commence on July 1, 2017 (the "**Commencement Date**") and shall end on June 30, 2020 (the "**Termination Date**"), unless sooner terminated in accordance with the provisions of this Lease.

Notwithstanding the Term, Landlord shall have the right, through July 15, 2017, to park up to sixteen (16) buses on the Leased Premises at no charge, and at Landlord's own risk of loss with respect to such vehicles. The location of such buses shall be parked so as not to interfere with Tenant's use and enjoyment of the Leased Premises.

3. <u>Rent</u>.

    (a) **Rent.** Beginning on the Commencement Date and for the remainder of the Term, Tenant shall pay to Landlord as rent ("**Rent**"), on or before the first day of each and every calendar month during the Term, the sum of Five Thousand and 00/100 Dollars ($5,000) a month. As described in Section 4 governing Tenant's Option to Purchase (the "Option"), the sum of Three Thousand Five Hundred and no/100 Dollars ($3,500) of each Five Thousand Dollar ($5,000)

EXHIBIT "A"

monthly payment shall be applied toward the Purchase Price for the Property if Tenant validly exercises the Option, and the sum of One Thousand Five Hundred and no/100 Dollars ($1,500) of each monthly payment shall not be applied toward the Purchase Price. The Rent shall include payment of real estate taxes, but shall exclude all utilities for Property No. 1, which utilities shall be the sole responsibility of Tenant. The Parties acknowledge that the utilities for Property No. 2 are paid by the Residential Tenants.

(b)     Each monthly payment of rent (the "**Monthly Rental Payment**") shall be made in legal tender of the United States of America. Monthly Rental Payments shall be paid to the Landlord at the Landlord's address designated above, or at such other place designated in writing by the Landlord. At Tenant's option, Tenant shall be entitled to pay the Rent directly to Landlord's mortgagees to cover Landlord's mortgage obligations and any escrow payments thereunder. In such event, Tenant shall immediately provide to Landlord copies of any and all payments contemporaneously with the making of such payments, to demonstrate timely payment of rent hereunder. Any such payments by Tenant to Landlord's mortgagees shall be credited towards the Rent due and payable by Tenant hereunder. Any payments in excess of the Five Thousand and 00/100 ($5,000.00) Dollar monthly rent made directly to mortgagees by Tenant shall be applied to the purchase price.

(c)     **Time of Payment.** Except for sums actually paid by Tenant to Landlord's mortgagees pursuant to Section 3(b) hereof, all sums of money or charges required to be paid by the Tenant to the Landlord under this Lease in addition to Rent shall be due and payable at the times set forth herein, without any deductions or setoffs whatsoever, in the manner provided for herein, and all such amounts or charges shall be paid to the Landlord at the same place the Rent is paid.

(d)     **Late Payments.** In the event Rent, or any other amount due Landlord hereunder, or any installment thereof, is not paid within fifteen (15) calendar days of when due, then the Tenant shall also pay to the Landlord a late payment fee equal to $50.00. Such payment is intended to compensate the Landlord for the additional costs and expenses the Landlord may incur as a result of the Tenant's delay and shall not be deemed to be a penalty. Such late payment fee, however, shall not excuse the timely payment of Rent, or other amount due, or be a waiver by the Landlord of the Tenant's default. All bank service charges resulting from any bad checks issued by Tenant to Landlord shall be borne by the Tenant.

4.     Option to Purchase. (a) Within sixty (60) days following the execution and delivery of this Lease, Landlord and Tenant shall mutually agree on a qualified commercial real estate appraiser to provide an opinion of the fair market value (FMV) of the fee title to the Leased Premises as of the date of the appraisal. The appraiser shall certify his or her independence and neutrality in rendering the appraisal. The parties shall mutually agree on the information and description of the Property to be provided to the appraiser, and the appraiser shall be given reasonable access to the Property by Landlord to the extent necessary for the appraiser to perform the appraisal. The cost of such appraisal shall be shared equally by Landlord and Tenant. If the appraiser expresses a value as a range of values, then the appraised value shall be deemed to be the highest dollar figure of the range of values expressed by the appraiser. If the parties cannot agree on a qualified appraiser, then Landlord shall select an appraiser, the Tenant shall select an appraiser, and the two appraisers shall select a third appraiser. The cost of Landlord's appraiser shall be paid by Landlord; the cost of

Tenant's appraiser shall be paid by Tenant; and the cost of the third appraiser (if any) shall be shared equally by Landlord and Tenant. All three appraisals shall be averaged to determine the FMV of the Properties. If any or all of the appraisers express(es) a value as a range of values, then for purposes of averaging the three appraisals, the appraised value by such appraiser shall be deemed to be the highest dollar figure of the range of values expressed by the appraiser.

(b) Provided that Tenant is not in default of its obligations under this Lease, Landlord hereby grants the Tenant the right at any time on or after June 30, 2018, through and including December 31, 2019, an option to purchase the Leased Premises in accordance with the terms and conditions set forth in this Lease. Tenant shall exercise such option by giving Landlord written notice of such exercise of the Option at a date no earlier than June 30, 2018, and no later than December 31, 2019. As described in Section 3, of the monthly rental payments, the sum of $3,500 shall be applied towards the Purchase Price. Between the exercise of the Option and the closing on the purchase, Tenant shall remain fully obligated to make rental payments and otherwise fully comply with the terms of this Lease. In the event Tenant is in default of this Lease after exercising the Option, Landlord shall have the right to terminate the agreement of purchase and sale by written notice to Tenant, and Landlord shall thereafter be under no duty to transfer title to Tenant pursuant to the exercised Option/agreement of purchase and sale.

(c) Unless otherwise mutually agreed between Landlord and Tenant, if the option is validly exercised, closing shall occur on the purchase on the date immediately following the last day of the Term of this Lease (the "Closing"). In the event that the Closing shall occur prior to the expiration of this Lease by mutual agreement of the Parties, then (i) the sum of $1,500 (prorated for any partial months) for all remaining months of the 36-month term of the Lease shall be accelerated and shall become immediately due and payable at the Closing; and (ii) the sum of all remaining lease payments for the Residential Parcel (prorated for any partial months) for the remaining months of the 36-month term of the Lease shall be accelerated and shall become immediately due and payable at the Closing.

5. Conduct of Tenant's Business.

(a) **Use of Premises.** The Tenant shall occupy and use the Leased Premises solely for the purposes of operating a school bus depot, dispatch and vehicle maintenance center and the Premises shall be occupied only by Tenant under this Lease. The Tenant shall fully and continuously operate its business in the Leased Premises and shall not use, or permit the use of the Leased Premises for any other business or purpose, nor shall the Tenant permit others to sell merchandise or services at the Leased Premises unless agreed to in writing by the Landlord. The Tenant, at its sole cost and expense, shall procure and maintain in effect any and all governmental licenses or permits required for the proper and lawful conduct of the Tenant's business. The Tenant shall at all times comply with the requirements of such licenses or permits.

(b) **Operation of Business.** The Tenant shall continuously operate its business with due diligence and efficiency maintaining at all times an appropriate staff of employees and fleet of vehicles.

(c) **Laws and Regulations.** The Tenant shall comply with all statutes, ordinances, regulations and orders of all federal, state and local governmental authorities, including all zoning, signage, noise and land use ordinances and regulations of the Township of Brighton and shall maintain the Leased Premises at its sole cost and expense in a clean, orderly, sanitary and attractive condition and shall not permit undue accumulation of garbage, trash or other refuse, but shall dispose of the same at its own expense and by means of a commercial refuse removal service. The Tenant shall not use or permit the use of the Leased Premises in any manner that would create a nuisance or unreasonably disturb other tenants of Parcel 2 if any, or adjacent properties.

6. Trade Fixtures; Alterations And Improvements; Signs.

(a) **Trade Fixtures.** All trade fixtures placed on the Leased Premises by the Tenant shall be maintained by the Tenant in good and attractive condition.

(b) **Alterations and Improvements.** Tenant shall not make any structural alterations, additions or improvements without the express written consent of the Landlord, which shall not be unreasonably withheld. Tenant shall have the right, in Tenant's reasonable discretion, to make non-structural alterations, additions or improvements or other changes on or to the Leased Premises without the Landlord's prior written consent. The Tenant shall present plans and specifications for any such work to the Landlord at least sixty (60) days prior to the time any alterations, additions or improvements are made. All such alterations, additions and improvements shall be made at the Tenant's sole cost and expense. Any alterations, additions and improvements which are permanently affixed to the Leased Premises shall become part of the Leased Premises when made and, at the end of the Lease Term, as the case may be, shall remain upon and be surrendered with the Leased Premises as a part thereof, provided, however, that non-structural additions and improvements may be removed by Tenant solely if such removal will not damage any of the existing structures or improvements.

(c) **Signs, Awnings and Canopies.** The Tenant shall not place on the interior or exterior of any doors or windows of the Leased Premises any signs, awnings, canopies, decorations, lettering, advertising or other matter of any kind or place or maintain anywhere on the Leased Premises any animated or flashing signs that are visible from the exterior of the Leased Premises unless such signs, awnings, canopies, decorations, lettering, or advertising is fully compliant with all local zoning and signage regulations. Any such items shall be maintained by the Tenant in good condition and repair at all times.

- 4 -

7. Maintenance of Leased Premises.

(a) **Repairs by Tenant.** The Tenant, at its sole cost and expense, shall maintain and keep the Leased Premises and all fixtures, equipment, and other items located thereon and affixed thereto in good order, condition and repair, including, but not limited to, the windows, plumbing, electrical and communications wiring, sewage, and heating, ventilation and air conditioning (HVAC) system, unless any repairs thereto are necessitated as a result of the grossly negligent or willful actions of Landlord. The Tenant shall also be responsible for all costs and expenses necessary to maintain and repair the exterior and structure of the Leased Premises, including, but not limited to the foundation, outer walls, downspouts, gutters and roof of the Building, unless any repairs thereto are necessitated as a result of the grossly negligent or willful actions of the Landlord.

(b) **Emergency Repairs.** During an emergency, if it shall become necessary to promptly make any repairs or replacement otherwise required to be made by the Tenant, then the Landlord may enter the Leased Premises and proceed forthwith to have such repairs or replacements made, and to charge Tenant for such repairs or replacements as additional rent.

(c) **Landlord's Right to Interrupt Utilities.** When necessary by reason of accident or other cause or in order to make any repairs, alterations or additions or improvements in or relating to the Leased Premises or to the Building, the Landlord reserves the right, upon reasonable notice to Tenant, to interrupt, for reasonable periods of time, the supply of electricity, water, gas and other utilities to the Leased Premises, and also to suspend the operation of the heating or air conditioning system in/or to the Leased Premises until said repairs, alterations, additions or improvements shall have been completed. So long as the Landlord shall pursue such work with reasonable diligence, there shall not be an abatement in rent because of any such interruption or suspension. The Landlord agrees to pursue such work with as little obstruction to the conduct of the Tenant's business as may reasonably be possible under the circumstances.

8. Insurance, Liability and Indemnification.

(a) **Tenant's Insurance.**

(i) At all times during the term hereof, the Tenant shall, at it's sole cost and expense, procure and maintain in effect (i) fire and extended coverage insurance on the Leased Premises and on the merchandise, equipment and fixtures therein; (ii) comprehensive general public liability insurance with minimum limits of at least $1,000,000 for injury or death of one person in each occurrence, $3,000,000 for injury or death of more than one person in each occurrence, and full replacement value for property damage in each occurrence; (iii) worker's compensation insurance; (iv) sprinkler leakage insurance, if applicable, and; (v) plate glass insurance, if such glass is installed on the Leased Premises.

(ii) All insurance policies to be maintained by the Tenant pursuant to this Section 8(a) shall (i) be issued by insurance companies reasonably satisfactory to the Landlord, (ii) be written as primary policy coverage not contributing with or in excess of any coverage which the Landlord may carry, (iii) insure and name the Landlord and any mortgagee of the Property or

- 5 -

Building as additional insureds as their respective interests may appear, and (iv) contain an express waiver of any right of subrogation by the insurance company against the Landlord or the Landlord's agents and employees. All such insurance policies shall contain a clause providing that the insurance company shall give the Landlord at least ten (10) days prior written notice of the expiration, termination, cancellation or material modification of such insurance policy. If the Tenant shall fail to obtain or maintain any such insurance, the Landlord may, at its option, obtain or maintain such insurance and the premium so paid by the Landlord shall be immediately payable by the Tenant to the Landlord as additional rent. The Tenant shall deliver to the Landlord a certificate issued by the Tenant's insurance carrier or its authorized agent evidencing the insurance coverage required hereunder.

(b)　**Landlord's Insurance.** The Landlord shall also carry adequate fire and general comprehensive liability insurance relating to the Building.

(c)　**Waiver of Subrogation.** The Landlord and the Tenant hereby waive each and every claim which arises or may arise in its favor and against the other party during the Lease Term for any loss or damage covered by any insurance policy carried by the Landlord or the Tenant under this Section 8. Each insurance policy required to be carried by the Landlord or the Tenant under this Section 8 shall be written to provide that the insurer waives all right of subrogation against the Landlord or the Tenant, as the case may be, in connection with any loss or damage covered by such insurance policy, or for which either party may be reimbursed as a result of insurance coverage affecting any loss suffered by it, provided, however, that such waiver shall only apply to the extent of any recovery made by the Landlord or the Tenant under such insurance policies.

(d)　**Indemnification by Tenant.** Tenant does hereby assume liability for and does hereby agree to indemnify, defend, protect and hold harmless Landlord from and against any and all liabilities, losses, damages, penalties, claims, actions, suits, costs, expenses and disbursements, including attorneys' fees, in connection with loss of life, personal injury, and/or property damage (i) arising from or out of or in any way relating to any occurrence in, upon or at the Leased Premises, or occupancy and use by Tenant of Leased Premises or any part thereof, occasioned wholly or in part by any act or omission of Tenant, its agents or employees; and (ii) arising from or out of or in any way relating to the operation of any and all above-ground fuel tanks operated by Tenant on the Leased Premises, unless caused by the gross negligence or willful misconduct of Landlord. The indemnity obligations set for in this section shall survive the expiration or termination of this Lease.

(e)　**Indemnification by Landlord.** Landlord does hereby assume liability for and does hereby agree to indemnify, defend, protect and hold harmless Tenant from and against any and all liabilities, losses, damages, penalties, claims, actions, suits, costs, expenses and disbursements, including attorneys' fees, in connection with loss of life, personal injury, and/or property damage arising from or out of any occurrence in, upon or at the Leased Premises, occasioned wholly or in part by any act or omission of Landlord, its agents or employees. The indemnity obligations set forth in this section shall survive the expiration or termination of this Lease.

9. Utilities.

(a) Tenant shall be responsible for and pay directly to the public utility companies, all costs and charges associated with public utilities charges associated with the Leased Premises including electricity, telephone, gas, garbage and other utility services provided to, used by or consumed at the Leased Premises throughout the Lease Term.

(b) The Landlord shall not be liable to the Tenant or to anyone claiming under, by or through the Tenant for the quality or quantity, or for any failure or interruption, of any utility service being furnished to the Tenant, whether furnished by the Landlord or by a public utility company, and no such failure or interruption shall be a breach of this Lease or otherwise entitle the Tenant to terminate this Lease, provided, if such failure or interruption is the result of the negligence of the Landlord or its agents, employees, contractors or subcontractors, or if such interrupted service is not restored within twenty-four (24) hours of its interruption, then the Rent shall abate until such service is returned to use. Additionally, if such failure or interruption is to utilities furnished by the Landlord, then such failure or interruption shall be a breach of this Lease or otherwise entitle the Tenant to terminate this Lease if the Landlord fails to pursue the necessary repairs with reasonable diligence.

10. Condemnation.

(a) **Total or Partial Condemnation.** If the whole of the Leased Premises shall be condemned or taken for any public or quasi-public use or purpose, under any statute or by right of eminent domain, or by private purchase in lieu thereof, or if such portion of the Leased Premises shall be condemned or taken so as to render the remaining portion of the Leased Premises unsuitable for the Tenant's business as conducted in the Leased Premises, then the Tenant may terminate this Lease upon and by giving written notice of termination to the Landlord and the Tenant shall be liable for the Rent only up to the time of such condemnation or taking. In the event of a partial condemnation or taking which does not render the remaining portion of the Leased Premises unsuitable for the Tenant's business, then the Landlord shall promptly restore the Leased Premises to its condition at the time of such condemnation, and this Lease shall continue in full force and effect with a proportionate reduction or abatement of the Rent.

(b) **Condemnation Award.** Any award for any condemnation or taking of all or any part of the Leased Premises under the power of eminent domain, or any private purchase price in lieu thereof, shall be the property of the Landlord, whether such award be made as compensation for diminution in value of the leasehold or for the taking of the fee. Nothing contained herein, however, shall be deemed to preclude the Tenant from obtaining, or to give the Landlord any interest in, any award to the Tenant for loss of or damage to the Tenant's merchandise, fixtures, equipment or other property or for damages for cessation or interruption of the Tenant's business.

11. Access to Premises.

(a) **Right of Entry.** During the Lease Term, the Landlord, the holder of any mortgage upon the Leased Premises or upon the Landlord's interest in this Lease, and persons designated by the Landlord and such mortgagee, shall, upon reasonable notice to the Tenant, have

access to the Leased Premises at reasonable hours to inspect the Leased Premises and to make any repairs or do any other work required or permitted by this Lease to be made by the Landlord, provided, the Landlord shall pursue such work with reasonable diligence and as little disruption to the Tenant's conduct of business as reasonable under the circumstances, and provided further, that in the event of an emergency, the Landlord shall not be required to give notice to the Tenant.

12. <u>Default; Remedies; Waiver.</u>

(a) **Defaults.** The occurrence of any one or more of the following events shall constitute a default and a breach of this Lease by the Tenant:

(i) The vacation, failure to continuously operate, or abandonment of the Leased Premises for a period of thirty (30) days by the Tenant prior to the end of the Lease Term, or the failure by the Tenant to vacate the Leased Premises at the end of the Lease Term;

(ii) The Tenant's failure to pay when due any installment of Rent, and such failure shall continue for a period of five (5) days after written notice thereof from the Landlord to the Tenant (a "**Payment Default Notice**");

(iii) The Tenant's failure to observe or perform any of the other covenants, conditions or provisions of this Lease to be observed or performed by the Tenant, other than the payment of Rent, which failure shall continue for a period of thirty (30) days following written notice thereof from the Landlord to the Tenant, or for such other period as may be specifically provided for in this Lease;

(iv) An assignment by the Tenant for the benefit of creditors; the adjudication that the Tenant is bankrupt or insolvent; institution of bankruptcy proceedings by the Tenant; institution of bankruptcy proceedings against the Tenant which are not withdrawn or dismissed within ninety (90) days after institution of said proceedings; the attachment, execution or levy against, or other judicial seizure of, substantially all of the Tenant's assets located in the Leased Premises or of the Tenant's interest in this Lease (unless the same is discharged within ninety (90) days after issuance thereof).

(b) **Remedies.** Upon the occurrence of any default or breach of this Lease by the Tenant as set forth in Section 12(a) hereof:

(i) Landlord may declare all rent for the remaining Lease Term to be accelerated and become immediately due and payable.

(ii) The Landlord, at its option, may terminate this Lease immediately. In such case, the Landlord shall deliver written notice to the Tenant setting forth the effective date of termination of this Lease.

(iii) Landlord shall have the right to pay any monetary obligations of Tenant hereunder (such as, but not limited to, making repairs and replacements) and to charge Tenant for such sums as additional rent, which shall be due and payable upon Landlord's provision to Tenant of invoices, receipts and evidence of payment thereof.

(iv)    The Landlord may exercise any other right or remedy it may have at law or in equity.

(v)    All remedies provided for in this Lease shall be cumulative, and are not meant to be exclusive of any other rights or remedies of the Landlord.

(c)    **Waiver.**

(i)    The failure or delay on the part of the Landlord or the Tenant to enforce or exercise at any time any of the provisions, rights, or remedies in this Lease, shall in no way be construed to be a waiver thereof, nor in any way to affect the validity of this Lease or any part hereof, or the right of the party to thereafter enforce each and every such provision, right or remedy.

(ii)    No waiver of any breach of this Lease shall be held to be a waiver of any other or subsequent breach.

(iii)    The receipt by the Landlord of Rent at a time when Rent is in default under this Lease shall not be construed as a waiver of such default. The receipt by the Landlord of a lesser amount of Rent due shall not be construed to be other than a payment on account of Rent then due, nor shall any endorsement or statement on the Tenant's check or in a letter accompanying the Tenant's check be deemed an accord and satisfaction, and the Landlord may accept such payment or check without prejudice to the Landlord's right to recover the balance of Rent due or to pursue any other remedies provided in this Lease.

13.    Assignment, Attornment And Successors.

(a)    **Tenant Assignment.** The Tenant shall not, without the prior written consent of the Landlord, voluntarily or by operation of law, assign, sublease, transfer, mortgage or otherwise encumber all or any part of the Tenant's interest in this Lease or in the Leased Premises. Any consent given by the Landlord pursuant to this Section 13(a) shall be construed to apply only to the specific transfer, assignment or other transaction thereby authorized and shall not be construed as a waiver of the Tenant's obligation to obtain the Landlord's consent for any other transfer, assignment or transaction and shall not release the Tenant from any of its obligations hereunder.

(b)    **Landlord Assignment and Attornment.**

(i)    Before Option Expires and Before Closing if Option is Exercised. The Landlord shall not, without the prior written consent of the Tenant, voluntarily or by operation of law, assign, sublease, transfer, mortgage or otherwise encumber all or any part of the Tenant's interest in this Lease or in the Leased Premises while Tenant's option to purchase is in effect without Tenant's written consent.

(ii)    If Option is Not Exercised. In the event that Tenant fails to exercise its option to purchase, then in the event thereafter of any assignment, sublease or other transfer or transfers of the Landlord's interest in this Lease or in the Property (except a transfer by way of security), the Tenant shall, upon request of the Landlord or such transferee, attorn to and recognize as the Landlord under this Lease the transferee of such interest, and the Landlord (and, in the case of

- 9 -

any subsequent transfer, the then transferor) shall, from and after the date of such transfer, be relieved and free of all liability with respect to the performance of any covenants or agreements on the part of the Landlord contained in this Lease thereafter to be performed. Any funds in the hands of the Landlord or the then transferor at the time of any such transfer, in which funds the Tenant has an interest, shall at the time of such transfer be delivered to the then transferee to be further held by such transferee or paid to the Tenant or otherwise disposed of as this Lease may provide, and upon the transfer of any such funds to the transferee, the Landlord or the then transferor shall be discharged from any liability with respect to such funds.

(c)     **Successors.** The respective rights and obligations provided in this Lease shall bind and shall inure to the benefit of the parties hereto, their legal representatives, heirs, successors and assigns, provided, however, that no rights shall inure to the benefit of any successor or assignee of either party unless the other party's prior written consent for the transfer to such successor or assignee has first been obtained to the extent required hereunder.

14.    Quiet Enjoyment. So long as the Tenant has paid all Rent due under this Lease and has performed the covenants and conditions to be performed by it, the Tenant shall and may peaceably and quietly have, hold and enjoy the Leased Premises for the term hereof, without hindrance or molestation by the Landlord or any person or persons claiming under the Landlord, subject to the covenants, agreements, terms, provisions and conditions of this Lease.

15.    Surrender of the Leased Premises. Upon termination of this Lease, the Tenant shall surrender the Leased Premises to the Landlord, together with all improvements, changes, and alterations, broom clean and in good order, condition and repair except for ordinary wear and tear.

16.    Removal of Personal Property. Upon termination of this Lease, the Tenant may, and at the Landlord's request shall, remove from the Leased Premises all trade fixtures and merchandise and shall promptly, at the Tenant's sole cost and expense, repair any damage caused by such removal. Any personal property of the Tenant which shall remain in the Leased Premises after the termination of this Lease and the removal of the Tenant from the Leased Premises, may, at the option of the Landlord be deemed to have been abandoned by the Tenant and may be either retained by the Landlord as its property or be disposed of, without accountability, in such a manner as the Landlord may deem fit (including having the same stored at the risk and expense of the Tenant), or if the Landlord shall give written notice to the Tenant to such effect, such property shall be removed by the Tenant at the Tenant's sole cost and expense. The foregoing provisions shall be without prejudice to any election by the Landlord that the Tenant's failure to remove its property constitutes a holding over by the Tenant.

17.    Casualty.

(a)     **Occurrence of Casualty.** In the event the Leased Premises are totally or partially destroyed by fire, explosion, the elements or other casualty, the Tenant shall notify the Landlord of such damage. Thereafter, Landlord shall, at the option of the Tenant and with all due diligence, repair, restore and rebuild the premises to a condition substantially the same as existed before the damage and shall bear all costs for labor and materials incurred in connection with that work. The requirement of due diligence in restoring the premises shall be subject to a reasonable

- 10 -

opportunity to adjust loss with insurance companies and to a reasonable opportunity to obtain labor and materials if they are unavailable for a reason other than the fault of Landlord. If the partial or total destruction of the premises shall occur during the option period as set forth in this Lease, the Tenant shall have the right to exercise Tenant's option to purchase the Leased Premises at the agreed sale price and to receive from Landlord the proceeds of Landlord's insurance claim to be applied by Tenant at Tenant's option toward the repair or replacement of the damage to the Leased Premises or to apply the insurance proceeds to the purchase price.

(b) **Abatement of Rent.** To the extent the Tenant shall be deprived of the use and occupancy of the Leased Premises or any portion thereof as a result of any total or substantial destruction or damage or the repair thereof, the Tenant shall be relieved of the same ratable portion of Rent as the amount of damaged or useless space of the Leased Premises bears to the total space of the Leased Premises, provided, however, that in the event such damage or destruction precludes the Tenant from opening for business, the Rent shall completely abate until such time as the Tenant is able to open for business. Notwithstanding the foregoing, if such damage or destruction is due to the fault or neglect of the Tenant, its servants, employees, agents or licensees, there shall be no abatement of Rent.

18. Notices. All notices, requests, consents, claims, demands, waivers and other communications hereunder (each, a "**Notice**") shall be in writing and addressed to the parties at the addresses set forth on the first page of this Lease (or to such other address that may be designated by the receiving party from time to time in accordance with this Section). All Notices shall be delivered by personal delivery, nationally recognized overnight courier (with all fees pre-paid), facsimile (with confirmation of transmission) or certified or registered mail (in each case, return receipt requested, postage pre-paid). Except as otherwise provided in this Lease, a Notice is effective only (a) upon receipt by the receiving party, and (b) if the party giving the Notice has complied with the requirements of this Section.

19. Subordination and Financing. The Tenant accepts this Lease subject and subordinate to any and all (i) mortgages (including, without limitation, the notes or other obligations secured thereby and any and all renewals, modifications, consolidations, replacements or extensions of any such mortgage or the notes or other obligations secured thereby) now in existence or hereafter made from time to time and at any time, affecting the fee title to the Property or any part thereof, or the Landlord's interest therein, and (ii) instruments in the chain of fee title or leasehold title to the Property, including any and all renewals, modifications, consolidations, replacements or extensions of such instruments. The Tenant shall, upon demand, execute, acknowledge and deliver any releases or other documents that may be required by the Landlord, the holder of any mortgage or any party to an instrument, for the purpose of evidencing the subordination of this Lease.

20. Force Majeure. In the event that either party shall be delayed or hindered in, or prevented from, the performance of any work, service or other acts required under this Lease to be performed by the party and such delay or hindrance is due to strikes, lockouts, acts of God, governmental restrictions, enemy act, civil commotion, unavoidable fire or other casualty, or other causes of a like nature beyond the control of the party so delayed or hindered, then performance of such work, service or other act shall be excused for the period of such delay and the period for the performance of such work, service or other act shall be extended for a period equivalent to the period

of such delay. This Section shall not operate to excuse the Tenant from the prompt payment of Rent after the commencement of the Lease Term.

21. <u>Mechanics' Liens</u>. If any mechanics' or other liens shall be filed against the Building or the Leased Premises, or alleged to be by reason of, any repairs or improvements or other work caused by the Tenant to be done on or about the Leased Premises, the Tenant shall, at its sole cost and expense, cause such lien to be canceled and discharged of record, by bond or otherwise as allowed by law, within thirty (30) days after the filing thereof; and the Tenant shall also defend on behalf of the Landlord, at the Tenant's sole cost and expense, any action or proceeding which may be brought regarding such lien, and shall satisfy and discharge any judgment entered thereon and shall otherwise indemnify and save the Landlord harmless from any claim or damage resulting therefrom.

22. <u>Brokers</u>. Landlord and the Tenant represent and warrant to the other that they have not employed, been represented by or otherwise dealt with any real estate agent, broker or finder in connection with this Lease, and that no commission, fee or other compensation is payable in connection with the sale and purchase of the Property

23. <u>Governing Law and Venue for Disputes</u>. This Lease is being executed and delivered in the Commonwealth of Pennsylvania and shall be construed, governed and enforced in accordance with the Laws of the Commonwealth of Pennsylvania. Any and all disputes arising under this Lease shall be resolved in the Court of Common Pleas of Beaver County, Pennsylvania, and all parties consent to personal jurisdiction and venue in said court.

24. <u>Interpretation</u>. For purposes of this Lease, (a) the words "include," "includes" and "including" are deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; and (c) the words "herein," "hereof," "hereby," "hereto" and "hereunder" refer to this Lease as a whole. Unless the context otherwise requires, references herein: (x) to sections, schedules and exhibits mean the sections of, and schedules and exhibits attached to, this Lease; (y) to an agreement, instrument or other document means such agreement, instrument or other document as amended, supplemented and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. This Lease shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The schedules and exhibits referred to herein shall be construed with, and as an integral part of, this Lease to the same extent as if they were set forth verbatim herein.

25. <u>Headings</u>. The headings in this Lease are for reference only and shall not affect the interpretation of this Lease.

26. <u>Severability</u>. If any term or provision of this Lease is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Lease or invalidate or render unenforceable such term or provision in any other jurisdiction.

27. <u>Entire Agreement</u>. Except for the Settlement Agreement and Mutual Release entered into between Landlord and Tenant contemporaneously with this Lease, this Lease constitutes the sole and entire agreement of the parties to this Lease with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

28. <u>Counterparts</u>. This Lease may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Lease delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Lease.

**[Signatures to Appear on the Following Page]**

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Lease the day and year first above written.

WITNESS/ATTEST:                                LANDLORD:

*/s/ Donna J. Campbell*                        By: *[signature]*

                                               Name: Phyllis Ferguson Haney

WITNESS/ATTEST:                                TENANT:

                                               **FRYE TRANSPORTATION GROUP, INC.**

_____                By:_____

                                               Name: Daniel L. Frye, Jr., President

WITNESS/ATTEST:                                TENANT:

                                               **DANIEL L. FRYE, JR.**

_____                By:_____

                                               Name: Daniel L. Frye, Jr.

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Lease the day and year first above written.

WITNESS/ATTEST:          LANDLORD:

_____    By:_____

Name: <u>Phyllis Ferguson Haney</u>

WITNESS/ATTEST:          TENANT:

**FRYE TRANSPORTATION GROUP, INC.**

_____    By:_____

Name: <u>Daniel L. Frye, Jr., President</u>

WITNESS/ATTEST:          TENANT:

**DANIEL L. FRYE, JR.**

_____    By:_____

Name: <u>Daniel L. Frye, Jr.</u>

- 14 -

Exhibit "A" to Commercial Lease
Description of Premises

Parcel No. 1:

All that certain parcel known as Beaver County Tax Parcel No. 55-032-0101.000, bounded and described as follows, including the commercial building located thereon:

[Insert legal description]

Parcel No. 2:

[The lease of this parcel is subject and subordinate to any and all residential leases between Phyllis Haney, as Lessor, and any and all residential tenants of the property for the entire term of this lease].

All that certain parcel known as Beaver County Tax Parcel No. 55-032-0101.001, bounded and described as follows, including the residential dwelling located thereon:

[Insert legal description]



**COMMONWEALTH REAL ESTATE SERVICES, LLC**

426 Adams Street
Rochester, PA 15074
Phone: (724) 775-6933
Fax: (724) 775-6949

Website: www.cresonline.com

September 5, 2017

Phyllis Haney
c/o H. Kunselman, Esq.
Strassburger McKenna Gutnick & Gefsky
Suite 2200, Four Gateway Center
444 Liberty Avenue
Pittsburgh, PA 15222

Daniel J. Frye
c/o A.L. Steff, Esq.
 Law Offices of A.L. Steff, Jr & P.A. Steff
664 4th Street
Beaver, PA 15009

RE: 902 Western Avenue
   Tax Parcel 55-032-0100.001
   Brighton Township
   Beaver County, Pennsylvania

Dear Ms. Haney and Mr. Frye:

    At your request, we have physically inspected the above referenced property for the purpose of arriving at an estimate of the Fair Market Value, premised upon extraordinary assumption, as of July 16, 2017. This summary report is made in accordance with the Uniform Standards of Professional Appraisal Practice guidelines.

    The research methods used in this report include collection of general data in regard to the subject neighborhood and market, as well as, specific information from observation. The data was obtained from various public and private sources, including observation and personal inspection. The data was verified and the most appropriate and relevant was considered for this report. An estimate of value is based on the research of similar properties recently sold, properties currently competing with the subject in the open market, and appraiser knowledge of the area and current market trends.

    After analyzing available data, it is our opinion that the estimated value of the subject property as of July 16, 2017 is:

**ONE HUNDRED TWO THOUSAND DOLLARS**
**($102,000)**

Sincerely,

Michael P. Kohlman, IFAS
PA Certified General Appraiser GA-000212

EXHIBIT "B"

# COMMONWEALTH
## REAL ESTATE SERVICES, LLC

426 Adams Street
Rochester, PA 15074
Phone: (724) 775-6933
Fax: (724) 775-6949

Website: www.cresonline.com

August 26, 2017
17-024

Phyllis Haney
c/o H.Kunselman, Esq.
Strassburger McKenna Gutnick & Gefsky
Suite 2200, Four Gateway Center
444 Liberty Avenue
Pittsburgh, PA 15222

Daniel J. Frye
c/o A.L.Steff, Esq.
Law Offices of A.L.Steff,Jr. & P.A.Steff
664 4th Street
Beaver, PA 15009

Appraisal Services: 1408 Eighth Avenue, Brighton Township, Beaver, PA 15009

Dear Ms. Haney and Mr. Frye:

Pursuant to your request, we have made an appraisal of the fee simple interest to the above referenced property, for the purpose of estimating market value.

A physical inspection of the property had been conducted on July 16, 2017. Necessary data was compiled and a careful, detailed analysis made of all factors pertinent to the estimate of value. The valuation reported is as of July 16, 2017. It is my opinion that the market value of the subject property, as of that date, is:

July 16, 2017. . . . . . . . . . . . . . . $65,000
SIXTY FIVE THOUSAND DOLLARS

The supporting data upon which this conclusion is based is contained in the accompanying report, subject to certain assumptions and limiting conditions.

Respectfully,

Michael P. Kohlman IFAS
Pennsylvania General Real Estate Appraiser Certification No. GA-000212-L

EXHIBIT "C"